# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| JAMES STACKHOUSE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 7:16-cv-01315-VEH-JHE |
| | ) |
| DR. PAVLOKOVIC, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

On August 12, 2016, plaintiff James Stackhouse filed a *pro se* prisoner complaint pursuant to 42 U.S.C. § 1983. (Doc. 1). He names Dr. Pavlakovic, Captain John Hutton, and Warden Willie Thomas as defendants. (*Id*. at 3). In his complaint, the plaintiff alleges that he has severe headaches and vision loss due to arterial swelling. (*Id*. at 3-4). He declares Dr. Hooks informed him the swelling is the result of improperly performed surgery, and that he could die if the artery is not repaired. (*Id*. at 5). The plaintiff has received no help from the defendants despite pleas for assistance. (*Id*. at 5-6). As part of his request for relief, the plaintiff demands "immediate action." (*Id*. at 4).

### I.  Procedural History

On August 19, 2016, the undersigned construed the plaintiff's request for 'immediate action' to be a motion for preliminary injunctive relief. (Doc. 3 at 2-3).

1

The defendants were directed to show cause why the relief should not be granted. (*Id.* at 4).  On September 15, 2016, the defendants filed a response supported by affidavits and other evidence.  (Doc. 9).

## II.  The plaintiff's allegations and the defendants' response

The undersigned has carefully examined the plaintiff's allegations, and the defendants' affidavits and medical records submitted in opposition to the plaintiff's request for preliminary injunctive relief.  (Doc. 9).  Defendants Thomas and Hutton deny having any knowledge of the plaintiff's condition, (docs. 9-4; 9-5), and Dr. Pavlakovic attests he has consistently provided timely evaluation, testing, and treatment for the plaintiff's symptoms.  (Doc. 9-1).

The medical records attached to the defendants' response reveal that the plaintiff began complaining of severe headaches and vision loss in January 2015. (Doc. 9-2 at 104-107).  Examinations of the plaintiff were unremarkable and it was noted that he was taking ibuprofen.  (*Id.*). In April 2015, Dr. Hooks, the ophthalmologist, thought the plaintiff might have chronic conjunctivitis and observed a lipoma on the plaintiff's left eyelid.  (Doc. 9-3 at 18).[1]  Between April and July 2015, Dr. Pavlakovic monitored the plaintiff's complaints of headaches and soreness on the right side of his head, prescribed steroids, and referred the

---

[1]  Dr. Hooks noticed this "large conjunctival cyst" on the plaintiff's left eyelid in April 2014 and discussed surgical options with him at that time.  (Doc. 9-3 at 22).  It does not appear the lipoma is in any way related to the plaintiff's headaches and blurry vision.

plaintiff to an ear, nose and throat (ENT) specialist who performed an MRI and took a biopsy of the affected area to rule out temporal arteritis. (*Id.* at 1-12). The results of the July 2015 biopsy were normal. (*Id.* at 9-12). Thus, contrary to the plaintiff allegations, he did not undergo surgery to relieve arterial pressure on the right side of his head.

In his complaint, the plaintiff declares that "[l]ater" in 2015, his "artery beg[a]n to swell again with the same problem." (Doc. 1 at 4). The medical records submitted by the defendants reveal that in August 2015, the plaintiff complained that his vision was worsening, and that he felt as though something was cutting his eye and that his eye would pop out. (Doc. 9-2 at 88-94). According to the examining nurse, the plaintiff had a whitish discharge coming from his eyes and a conjunctival growth on his left eye. (*Id.* at 88-89). The plaintiff had artificial tears to treat this eye condition. (*Id.* at 92).

On September 2, 2015, the plaintiff told the nurse that the off-site ENT stated he had something blocking his vision that could cause him to go blind. (Doc. 9-2 at 13). However, the ENT reports contain no notation that the plaintiff had any eye blockage, much less that he could go blind from it. (Doc. 9-3 at 9-12). On October 6, 2015, the plaintiff submitted one grievance concerning his head condition. (*Id.* at 109). The plaintiff wrote that he had not received monitoring or the results of the "surgery." (*Id.*). On October 12, 2015, Nurse Clabo responded

that his biopsy was normal, and that Dr. Pavlakovic had reported to her that he already had explained to the plaintiff that the biopsy was normal. (*Id*.). The plaintiff alleges he did not receive this response. (Doc. 1 at 2).

The plaintiff also declares that sometime later in 2015, Dr. Hooks told him that the artery was again swollen, the July 2015 surgery had been performed incorrectly, and that he could die if the artery burst. (Doc. 1 at 5). The medical records reveal that Dr. Hooks examines the plaintiff on January 7, 2016. (Doc. 9-3 at 17). This exam was conducted after the plaintiff complained to a nurse that "his eyes" had been hurting for the past month and he had previously undergone eye surgery. (Doc. 9-2 at 81). Dr. Hooks recorded the plaintiff's vision as being "20/50" and "20/40," and noted there was no significant vision change when compared to the plaintiff's previous exam. (Doc. 9-3 at 17). While there is a notation concerning a history of temporal arteritis, the only observation Dr. Hooks made was the presence of the temporal conjunctival lipoma. (Doc. 9-3 at 17). The plaintiff admits Dr. Hooks prescribed medication, but simultaneously complains he has received no help at the prison. (Doc. 1 at 5).

On January 15, 2016, the plaintiff complained about itchy eyes to Dr. Pavlakovic, and Pavlakovic noted Hooks had provided treatment. (Doc. 9-2 at 14). Pavlakovic attests he reviewed the plaintiff's normal biopsy results and saw no "evidence of any kind of trauma or abnormality with" the plaintiff's eyes upon

examination. (Doc. 9-1 at 14). On February 2, 2016, the plaintiff complained about being charged a co-pay because he is a chronic care patient, and that his eyes were still hurting him. (Doc. 9-2 at 104).

On May 30, 2016, Dr. Pavlakovic examined the plaintiff during chronic care clinic, as the plaintiff has a long history of gastroesophageal reflux disease and hypertension. (Doc. 9-2 at 119). Dr. Pavlakovic referred the plaintiff to the eye doctor (*id*.) though he attests the plaintiff did not complain about his eyes (doc. 9-1 at 14). In June 2016, the plaintiff filled out another request for medical assistance, writing that he had surgery in July 2015 to relieve pressure on his artery, and that it was swelling up again. (Doc. 9-2 at 77). During a June 9, 2016, nursing encounter with the plaintiff, staff contacted Dr. Pavlakovic, and he explained the plaintiff's "actual medical history." (Doc. 9-1 at 15; Doc. 9-2 at 78-79). The nurse then "spent time discussing with Mr. Stackhouse his condition." (*Id*.).

Dr. Pavlakovic attests that the plaintiff's complaint

> recite[s] many of the misconceived ideas and theories which he has stated to me during his prior medical appointments. In simplest terms, I along with other members of the Bibb medical staff have devoted a countless amount of time attempting to inform and educate Mr. Stackhouse about his prior medical condition, his prior medical treatment and his current condition. Despite these efforts, he either refuses to accept our attempts to resolve his misunderstandings or insists upon perpetuating his incorrect version of events

(Doc. 9-1 at 8). Pavlakovic also testifies that he

along with other members of the medical staff ensured that Mr. Stackhouse received an evaluation in response to his complaints. We ensured that his complaints of headaches and sore spots on his head received specialty evaluations by an ophthalmologist as well as an ENT specialist. There is no indication that his headaches are anything other than a possible result of the occasions when his hypertension is not well-controlled, and I have not received any recommendation from any type of specialist for any further evaluation, imaging study or testing beyond the examinations done to date.

(*Id.* at 15).

### III. Analysis

Preliminary injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). "In evaluating claims for preliminary relief, courts are bound by stringent standards." *Martinez v. Mathews*, 544 F.2d 1233, 1242 (5th Cir. 1976).[2] These standards require

> the moving party [to] establish that (1) there is a substantial likelihood that he ultimately will prevail on the merits of the claim; (2) he will suffer irreparable injury unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the public interest will not be harmed if the injunction should issue.

*Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir. 1983). "Because a preliminary

---

[2] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

injunction is 'an extraordinary and drastic remedy,' its grant is the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion." *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983) (quoting *Texas v. Seatrain International*, 518 F.2d 175, 179 (5th Cir. 1975)).

After careful consideration of the plaintiff's allegations and the defendants' responses, which are solidly corroborated by the medical records, the plaintiff has not clearly shown for preliminary injunctive relief purposes that there is a substantial likelihood he will prevail on the merits of his Eighth Amendment claims. Medical treatment violates the Eighth Amendment only when it is "so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (internal citation omitted). The conduct of prison officials must run counter to "evolving standards of decency" or involve the "unnecessary and wanton infliction of pain" to be actionable under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976) (footnote omitted). Therefore, negligent diagnosis or treatment of a medical condition does not constitute a wrong under the Eighth Amendment. *Estelle*, 429 U.S. at 106; *McElligot v. Foley*, 182 F.3d 1248 (11th Cir. 1999). Likewise, a mere difference of opinion between an inmate and the prison medical staff or between members of the medical staff as to treatment or

diagnosis will not, alone, give rise to a cause of action under the Eighth Amendment. *Harris*, 941 F.2d at 1505.

In this case, the evidence does not clearly support the plaintiff's contention that he is or has a history of suffering from temporal arteritis. Instead, the testing the plaintiff has undergone has produced normal results. The plaintiff has been and is being treated for his headache complaints, which Dr. Pavlakovic attests may be attributable to hypertension. There is no support for the plaintiff's assertion that he is currently suffering from a life-threatening condition that the defendants have either refused to treat him or have refused to intervene on his behalf and secure treatment. The plaintiff has a difference of opinion with Dr. Pavlakovic regarding the procedure performed in July 2015 and his medical condition. However, this difference of opinion does not translate into a substantial likelihood that the plaintiff will prevail on his Eighth Amendment claims. Therefore, the plaintiff cannot establish that he will suffer irreparable injury if his motion is not granted, and that the threatened injury to him outweighs the possible damage to the defendants or the adverse impact to the public interest in the administration of the prison system. The extraordinary circumstances necessary to justify preliminary injunctive relief are not present, and therefore, the plaintiff's request is **DENIED**.

The Clerk is **DIRECTED** to send the plaintiff and counsel for the defendants a copy of this Order.

**DONE** and **ORDERED** this September 20, 2016.

_____
**VIRGINIA EMERSON HOPKINS**
UNITED STATES DISTRICT JUDGE